## BARRETT v. SIPP ET AL.

[No. 7,573.   Filed April 26, 1912.]

1. BILLS AND NOTES.—*Action by Heirs.—Complaint.—Sufficiency.— "Only Children."*—In an action by the heirs at law of a decedent to recover on a promissory note executed to him, where the complaint alleged that no letters of administration had been granted on the estate, that decedent left no widow surviving him and that at the time of his death he left plaintiffs "as his children and only children and only heirs at law" and that they are the owners of the note, the phrase "only children," in the absence of words of qualification, must be construed to include deceased as well as living children, and the averments were sufficient to show the right of plaintiffs to maintain the action.   p. 307.

2. LIMITATION OF ACTIONS,—*Part Payment.—Effect.*—A voluntary part payment on a debt is *prima facie* sufficient to revive the debt, but such *prima facie* case may be rebutted by attendant circumstances inconsistent with such revivor.   p. 310.

3. LIMITATION OF ACTIONS.—*Part Payment.—Payment of Interest.* —A payment of interest, like a part payment of the principal on a debt barred by the statute of limitations, will operate as an acknowledgement of the obligation from which a promise to pay may be implied.   p. 310.

4. LIMITATION OF ACTIONS.—*Part Payment.—Evidence.*—To recover on a debt claimed to have been taken out of the statute of limi-

tations by a part payment, it must be shown that the payment was made on account of the debt for which the action is brought. p. 310.

5. PAYMENT.—*Rights as to Application of Payment.*—A debtor, who owes his creditor on separate debts, may direct his payments to be applied to either, and in the absence of such direction the creditor may apply the payment to such of the debts as he may choose. p. 311.

6. PAYMENT.—*Payments In Invitum.—Right as to Application.*— The right of a debtor to designate to which of several debts his payment shall be applied does not exist in case of payments *in invitum*, or by process of law, but only where the payment is voluntary. p. 311.

7. PAYMENT.—*Application.—Intent of Parties.*—Where the debtor pays with one intention and the creditor receives with another, the intent of the debtor will govern as to the application of the payment. p. 311.

8. PAYMENT.—*Application of Payment by Court.*—Where a debtor makes a payment to one to whom he owes several debts and neither he nor the creditor makes a specific appropriation thereof, the court will apply it according to the equity and justice of the case, having regard first to the intention of the debtor, if it can be gathered from the surrounding circumstances. p. 311.

9. PAYMENT.—*Question of Fact.*—Payment and the inference of an admission of continued indebtedness which may be drawn therefrom are questions of fact, and not of law. p. 313.

10. TRIAL.—*Defective Findings.—Venire De Novo.*—A defective attempt in the special findings to cover a material issue by stating items of evidence only instead of the fact which ought to have been found, is ground for a motion for a *venire de novo*. pp. 314, 315.

11. APPEAL.— *Review.— Special Findings.— Evidentiary Facts.*— Evidentiary facts in special findings furnish no grounds upon which the court can predicate its conclusions of law, and will be disregarded on appeal. p. 314.

12. PAYMENT.—*Application.—Secret Intent of Debtor.*—The secret intent of the debtor as to which of several debts a payment shall be applied, undisclosed at the time of the payment, and not ascertainable from the facts and circumstances surrounding and connected with the payment when made, does not control in the application thereof. p. 315.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by William W. Sipp and others against Hiram W.

Barrett and another. From a judgment for plaintiff, the defendant Hiram W. Barrett appeals. *Reversed.*

*J. R. McCoy* and *Thomas Duncan,* for appellant.

*Louis T. Shanner, J. M. & S. L. Vandeveer, Funkhouser & Funkhouser,* for appellees.

HOTTEL, J.—This was an action brought by appellees against appellant and William C. Barrett, to recover on a promissory note executed by appellant and others. From a judgment in favor of appellees this appeal was taken, and the following alleged errors are relied on for a reversal: That the court erred (1) in overruling appellant's demurrer to the amended complaint; (2) in its second and third conclusions of law on the special finding of facts; (3) in overruling appellant's motion for a *venire de novo;* (4) in overruling appellant's motion for a new trial.

Appellee's amended complaint is, in substance, as follows: That on January 1, 1889, Samuel G. Barrett, William C. Barrett and appellant executed and delivered to John Sipp, father of appellees, a certain promissory note, which is set out as an exhibit with the complaint; that on July 17, 1907, said John Sipp died intestate, and at the time of his death was owner of and had in his possession said note; that all debts and claims against said John Sipp at the time of his death, and all claims against his estate have been paid in full by appellees; that no letters of administration have been granted on said estate; that he left no widow surviving him, and that at the time of his death he left appellees "as his children and only children and only heirs at law"; that appellees are the owners of said note; that said Samuel G. Barrett died intestate, and said note was filed against his estate; that said estate was wholly insolvent, and nothing was paid on said note; that certain payments, indicated on the back of said note, have from time to time been made, but there yet remains due and unpaid thereon, principal and

interest, the sum of $750 and attorney's fees, for which judgment is prayed.

Appellant contends that the averment in the complaint, that the decedent, John Sipp, left appellees "as his children and only children and only heirs at law" does not

1.  supply the omission of an averment that said John Sipp left surviving him appellees who are his children and that he left surviving him no other children or descendants of other children. While it is true that some of the cases cited and relied on by appellant hold, in effect, that a recital that a party is the "only heir at law" of another, standing alone, is but a conclusion, yet the Supreme Court, in the case of *Physio-Medical College, etc.,* v. *Wilkinson* (1886), 108 Ind. 314, in discussing an allegation of a complaint similar to that here involved at page 316, said: "The averment that the plaintiffs are the heirs of the intestate, it is said, is but the statement of a conclusion of law. We do not concur in this view. It was equivalent to a statement of the fact, that the appellees stood in such relationship of kinship to Margaret Wilkinson, as that at her death the law of descents cast her estate upon them. If the appellant had deemed it important that the degree of consanguinity or affinity, relatively occupied by the deceased and the plaintiffs, should appear more in detail, a motion to make the complaint more specific might, with propriety, have been entertained." It is true that in the case quoted from, the attack on the complaint was first made by assignment of error in that court, but Judge Mitchell in the opinion does not limit or qualify his words quoted to an attack on the complaint so made. But even if it should be conceded that the language quoted should not be extended in its application so as to apply to a complaint first attacked by demurrer, yet there are other facts alleged in this complaint which indicate clearly that the plaintiffs are the only heirs at law, and in such case such averment, though a conclusion, does not vitiate the pleading.

In the complaint at bar it is averred that said John Sipp died intestate, that he left no widow, and that he left appellees as his children and only children, that all debts and claims against decedent and his estate had been paid, and that no letters of administration had been granted on said estate. The phrase "only children," in the absence of words of qualification, must be construed to include deceased, as well as living children. It is also averred in this complaint that appellees are the owners of said note. Considering these averments together, we think they are sufficient to show the right of plaintiffs to maintain the action. *Louisville, etc., R. Co.* v. *Kendall* (1894), 138 Ind. 313, 318, 319, 36 N. E. 415; *Evansville, etc., R. Co.* v. *Darling* (1893), 6 Ind. App. 375, 33 N. E. 636; *Byard* v. *Harkrider* (1886), 108 Ind. 376, 378, 9 N. E. 294; *Douthit* v. *Moore* (1889), 116 Ind. 482, 484, 18 N. E. 449.

In its special finding of facts the court, in effect, found the allegations of the complaint to be true. The part of the finding important in the consideration of the questions presented by the appeal is, in substance, as follows: For a number of years before January 2, 1899, and until after said date, appellant was indebted to said John Sipp on two notes of $500 each, which were made by appellant and William C. Barrett, and on which notes appellant was the principal debtor; that appellant was also indebted during said time to said John Sipp on a note of $1,500, made by himself alone, and which note was secured by a mortgage on real estate; that on each of these notes appellant made payments at different times, which were indorsed by said John Sipp on said notes as follows: "The following payments of interest upon said note (in suit) were made, namely, interest upon the same in full to January 1, 1893, and thereafter the following payments of interest, namely, October 18, 1896, $60; February 18, 1897, $16; January 14, 1898, $50; October 19, 1898, $50." Some of these later payments of interest on this note were made by appellant, Hiram W. Barrett; that

on the note here sued on, Samuel G. Barrett, who was the father of appellant, was the principal, and appellant and William C. Barrett were sureties on the same for said Samuel G. Barrett, but there was no evidence that said John Sipp at any time knew who was the principal debtor or who were the sureties on said note; that on January 2, 1899, appellant sent to John Sipp by letter, which was mailed to said John Sipp and was received by him, a check for $107.85, made by another person to the order of appellant, and which check was duly indorsed by appellant when it was sent to John Sipp; that in the letter which was enclosed with said check, appellant directed John Sipp to place the amount of said check to his credit, and gave no other direction in said letter or in any other way to said John Sipp as to the application of the amount of said check; that said John Sipp thereupon received the full amount of $107.85 of said check from its maker, and on January 2, 1899, said John Sipp applied of the $107.85, $16 on the note here sued on, and at the same time said John Sipp caused to be made the following indorsement on said note: "Rec'd $16.00 Jan. 2d, 99 H. W. Brt. Int. in full to January 1, 99''; that such payment of $16 paid the interest in full on said note to January 1, 1899; that said direction by appellant to said Sipp to place the check of $107.85 to the credit of appellant was an authority to said Sipp to apply said check, or any part of the same, on the note in suit in this action; that there is due and unpaid on said note $400, and interest at the rate of eight per cent. per annum from January 1, 1899; that defendant, William C. Barrett, had at no time made any payment on the note in suit, nor in any way recognized its binding force; that a reasonable attorneys' fee on the note in suit is $63.45. On the above facts the court announced the following conclusions of law: "(1) The defendant William C. Barrett is entitled to a judgment that the plaintiffs take nothing by their action against him. (2) The payment of the $16 upon

the note in suit on the second day of January, 1899, was effectual to make the note in question in this action a continuous contract from said date as to the defendant Hiram W. Barrett. (3) The plaintiffs are entitled to a judgment against the defendant Hiram W. Barrett for $746 for principal and interest and the further sum of $63.45 for attorney fees and in all the sum of $809.45 the same to be without relief from valuation or appraisement laws of the State of Indiana and it is so ordered.''

The underlying principles applicable to the questions raised by appellant's second and third errors relied on and set out, *supra*, as declared by the Supreme Court and this court, are as follows: (1) ''A voluntary part payment upon a debt, made as such, is *prima facie* sufficient to revive the debt, although such *prima facie* case may be rebutted by attendant circumstances inconsistent with such revivor.'' *Christian* v. *State, ex rel.* (1893), 7 Ind. App. 417, 423, 34 N. E. 825. See, also, *Wiley* v. *State, ex rel.* (1886), 105 Ind. 453, 5 N. E. 884; *Brudi* v. *Trentman* (1896), 16 Ind. App. 512, 44 N. E. 932.

(2) ''Part payment of the principal and payment of interest stand on the same footing. Payment is regarded as an acknowledgment of an existing obligation and from such acknowledgment a promise to pay the debt may be implied.'' *Meitzler* v. *Todd* (1895), 12 Ind. App. 381, 382, 39 N. E. 1046, 54 Am. St. 531. See, also, *Conwell* v. *Buchanan* (1845), 7 Blackf. 537.

(3) ''In order to take a case out of the statute of limitations by a part payment, it must appear, in the first place, that the payment was made on account of the debt. secondly, *it must appear that it was made on account of the debt for which the action is brought.*'' *Prenatt* v. *Runyon* (1859), 12 Ind. 174, 178.

On this subject the Supreme Court, in the case of *Carlisle* v. *Morris* (1857), 8 Ind. 421, 423, said: ''An admis-

sion of continued indebtedness may be inferred from the fact of part payment; but the court is not allowed to imply such admission as an inference of law. It must be left to the jury. It is only *prima facie* evidence, and may be rebutted by other evidence, and by the circumstances under which it was made. Further, in order to take a case out of the statute by a part payment, *it must appear that the payment was made on account of the debt for which the action is brought."* To the same effect see *Brudi* v. *Trentman, supra; Mozingo* v. *Ross* (1898), 150 Ind. 688, 690, 691, 50 N. E. 867, 41 L. R. A. 612, 65 Am. St. 387.

(4) "A debtor who owes his creditor money on distinct and separate accounts, or debts, may direct his payments to be applied to either, as he pleases. If the debtor omits to make any such appropriation, then the creditor has the right to apply the payments to such debts, due to him by the debtor, as he may choose." *Conduitt* v. *Ryan* (1891), 3 Ind. App. 1, 6, 29 N. E. 160. See, also, *Dungan* v. *Dollman* (1878), 64 Ind. 327.

(5) "The right of appropriation by the debtor applies, however, only to voluntary payments, and does not exist in case of payments *in invitum,* or by process of law. * * * And if the debtor pay with one intention and the creditor receive with another, *the intent of the debtor must govern. Reed* v. *Boardman* [1838], 20 Pick. 441. * * * If neither party make a specific appropriation of the money paid, then the law will apply it, in the language of Judge Story: 'According to its own notion of the intrinsic equity and justice of the case.' *Cremer* v. *Higginson* [1817], 1 Mason 323; 2 Parsons, Contracts 630. (6) When the duty of making the appropriation is thus imposed on the courts, the first question always is, *what was the intention of the debtor,* for although he may have made no express declaration upon the subject, yet *if his intention can be gathered from the surrounding circumstances of the case it must prevail."    Con-*

*duitt* v. *Ryan, supra.* See, also, *Adams Express Co.* v. *Black* (1878), 62 Ind. 128. (Italics in above quotation ours.)

On this last proposition this court, in the case of *Conduitt* v. *Ryan, supra,* on page 8, said: "In *Emery* v. *Tichout* [1841], 13 Vt. 15, the court said that in performing the duty of making the appropriation the courts have not always followed a uniform rule, but that 'there is one rule which is clear, that is, whenever the intention of the parties at the time can be ascertained that will govern if it be not unlawful.'"

These conditions are important, in view of the rule that the appropriation may be implied from circumstances as well as by words. *Howland* v. *Rench* (1844), 7 Blackf. 236; *Bayley* v. *Wynkoop* (1849), 5 Gilman (Ill.) 449.

In *Taylor* v. *Sandiford* (1822), 7 Wheat. 13, 5 L. Ed. 384, Chief Justice Marshall said: "'A payment may be attended by circumstances which demonstrate its application, as completely as words could demonstrate it.' It is plain that circumstances may furnish an equivalent to a declaration of appropriation."

On the same question the Supreme Court of this State, in the case of *Dungan* v. *Dollman, supra,* said: "The general rule in regard to the application of payments seems to be well established, that the payor and debtor owing two or more debts to the same creditor or payee, may direct the application of any payment made, as he may elect, to either of his said debts. It is not absolutely necessary in such a case, that the appropriation of the payment should be made by an express declaration of the debtor; for if his purpose and intention, as to the application of the payment, could be clearly gathered from the attendant circumstances, the creditor would be bound thereby, even in the absence of an express direction. *Adams Express Co.* v. *Black* [1878], 62 Ind. 128."

(7) Payment and the inference of an admission of continued indebtedness which may be drawn therefrom are ques-

tions of fact, and not of law. *Mozingo* v. *Ross, supra;*
9. *Christian* v. *State, ex rel., supra,* 423; *Binford* v.
*Adams* (1885), 104 Ind. 41, 43, 3 N. E. 753; *Braden*
v. *Lemmon* (1891), 127 Ind. 9, 13, 14, 26 N. E. 476; *Car-*
*lisle* v. *Morris, supra,* 423; *Belshaw* v. *Chitwood* (1895),
141 Ind. 377, 378, 382, 40 N. E. 908; *Bradway* v. *Groenen-*
*dyke* (1899), 153 Ind. 508, 512, 513, 55 N. E. 434.

The case of *Braden* v. *Lemmon, supra,* is an authority in
point on this question, and applicable to this particular case.
The Supreme Court in that case said: ''The real controversy
between the parties relates to the effect of the special find-
ing above referred to, the appellant contending that payment
is an ultimate fact to be found by the court, while it is con-
tended by the appellees that payment is a conclusion of law
to be deduced from a given state of facts. Mr. Thompson,
in his work on Trials, vol. 1, §1253, says: 'There is no rule of
law as to what is or as to what is not payment. Payment is
simply the doing of what a man has agreed to do. *It is,*
*therefore, a pure question of fact;* and where a man has
agreed to pay, and tenders what he understands to be per-
formance of his agreement, and the other party accepts it, it
is a naked question of fact and intent, whether it was ac-
cepted as performance. In every, such case the ultimate
point of inquiry does not touch a rule of law, but stops at a
conclusion of fact.' As applied to this case we fully concur
in what Mr. Thompson says upon this subject. Payment is
a question of fact, and not one of law. It will be observed
that in what purports to be the special finding of facts, there
is no direct finding that any portion of the note set up in the
cross-complaint has been paid. The facts found by the court
are evidential facts tending strongly, no doubt, to prove that
the money collected by Prickett on the Lemmon judgment
was intended by the parties as a payment on the note in
suit; *but the ultimate fact of payment is not stated in the*
*special finding of facts.* It is stated, however, as a conclu-
sion of law.  *  *  *  The question, therefore, is, shall we

reject the finding of the ultimate fact of payment, because it is stated as a conclusion of law, and not as a statement of fact. The question here presented does not seem to be open to argument. In the case of *Kealing* v. *Vansickle* [1881], 74 Ind. 529 [39 Am. Rep. 101] it was held that if, in the special finding, items of evidence only are stated, instead of the facts which ought to be found, and if the statement of the legal conclusions embraces matters of law, and also matters of fact which ought to have been found as such, a *venire de novo* should be granted. * * * The special finding is defective in failing to find the fact of payment, the ultimate fact in issue between the parties." (Our italics.)

(8) A defective attempt to cover the issue of payment, where such issue was a material one, by stating items of evidence only, instead of the fact which ought to be found, furnishes ground for a motion for a *venire de novo*. *Braden* v. *Lemmon, supra; Bradway* v. *Groenendyke, supra; Swift* v. *Harley* (1898), 20 Ind. App. 614, 618, 49 N. E. 1069.

Evidentiary facts found in special findings furnish no grounds on which the court can predicate its conclusions of law, and will be disregarded on appeal. *Bradway* v. *Groenendyke, supra; Braden* v. *Lemmon, supra; Craig* v. *Bennett* (1897), 146 Ind. 574, 45 N. E. 792; *Binford* v. *Adams, supra; Belshaw* v. *Chilwood, supra.*

The foregoing authorities, and the quotations therefrom make it clear that a *voluntary* part payment on an existing debt is *prima facie* sufficient to revive such debt and start anew the statute of limitation upon the theory that such payment is in the nature of an admission or acknowledgment by the debtor of "his liability, for the whole demand, and, from the fact that he made the payment a new promise on his part to pay the remainder of the debt may be implied."

It is also made clear by these authorities that to start anew the running of the statute, it must appear that the payment relied on was *voluntary;* that it *was made on account*

*of the debt for which the action is brought;* that at most such payment is "only *prima facie* evidence" of such revival of the debt and may be rebutted by other evidence, and "by attendant circumstances inconsistent with such revivor"; that "if the debtor pay with one intention and the creditor receive with another, *the intent of the debtor* must govern."

It must not be understood, however, from the expression just quoted, that the secret intent of the debtor, undisclosed at the time of payment, shall govern or control, but where from all the facts and circumstances surrounding and connected with the payment when made, the debtor's intent so disclosed, can be ascertained, it shall control, rather than the intent of the creditor. This is true as to payments generally made by a debtor to a creditor who holds two or more obligations of such debtor, and being true under such circumstances, there is much stronger reason for the application of the rule under circumstances where the debts held by the creditor are those of the debtor's own making on which he is primarily liable, and those made by some one else on which he is only secondarily liable.

We think we have indicated the law applicable to the facts of this case as expressed by the Supreme Court and this court. Under our view of the case, we deem it unnecessary to express any opinion on the question of what the evidence or the findings show on the subject of payment. Under the authorities cited, it is settled that the question of part payment and the admission of indebtedness that may be inferred therefrom, is a question of fact and not of law. No such fact is found in this case, but on the contrary, the court sets out the evidentiary facts on which the existence or nonexistence of such ultimate fact might be based. Under the authorities, these evidentiary facts must be ignored by this court, and without them the second and third conclusions of law have nothing for their support.

Inasmuch as the court below made a "defective attempt to cover the issue of payment the order should be to grant a

*venire de novo.*" *Bradway* v. *Groenendyke, supra,* and other authorities on this question heretofore cited.

We think the court below should have sustained appellant's motion for a *venire de novo,* and for error in overruling the same the judgment is reversed, with instructions to the court below to sustain such motion, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 98 N. E. 310. See, also, under (1) 14 Cyc. 152; (2) 25 Cyc. 1369; (3) 25 Cyc. 1373; (4) 25 Cyc. 1433; (5) 30 Cyc. 1228, 1233; (6) 30 Cyc. 1228; (7) 30 Cyc. 1240; (9) 25 Cyc. 1437; 30 Cyc. 1294; (10) 38 Cyc. 1921; (11) 3 Cyc. 347; (12) 30 Cyc. 1231, 1240. For a discussion of the application by a creditor of an undirected payment to a debt barred by limitation as reviving the unpaid portion, see 13 Ann. Cas. 1203. As to the directing by a debtor of the application of his payments, see 96 Am. St. 46. On the question of the revival of a barred debt by application of general payment, see 13 L. R. A. (N. S.) 1141.